12-0700-pr (L)
Cardoza v. Rock

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: February 15, 2013                           Decided: September 24, 2013)

Docket Nos. 12-0700-pr (L), 12-0709-pr (XAP)

------------------------------------

WILLIAM CARDOZA,

Petitioner-Appellee-Cross-Appellant,

- v -

DAVID ROCK, Superintendent, Great Meadow Correctional Facility, ERIC T.
SCHNEIDERMAN, New York State Attorney General,

Respondents-Appellants-Cross-Appellees.

------------------------------------

Before:       SACK, HALL, and LIVINGSTON, Circuit Judges.

              Appeal by the respondents from a judgment of the United States

District Court for the Southern District of New York (Paul A. Crotty, Judge)

granting in part the petitioner's habeas corpus application.  The petitioner cross-

appeals from so much of the judgment as denied his application for habeas relief.

We conclude that the state court's decision denying the petitioner's claim that he

received ineffective assistance of counsel because his attorneys failed to communicate to him all of his plea options was not based on an unreasonable determination of the facts in light of the evidence presented. We therefore reverse the judgment of the district court granting the application. We also conclude that the state court's denial of the petitioner's claim that he received ineffective assistance of counsel because one of his attorneys was a coconspirator of his did not rest on an unreasonable determination of the facts, and we affirm the district court's denial of the habeas application on this ground.

Affirmed in part; reversed in part.

SVETLANA M. KORNFEIND, The Legal Aid Society, Criminal Appeals Bureau, New York, NY, for Petitioner-Appellee-Cross-Appellant.

MICHELLE MAEROV, Assistant Attorney General (Barbara D. Underwood, Solicitor General, Roseann B. MacKechnie, Deputy Solicitor General for Criminal Matters, on the brief), for Eric T. Schneiderman, Attorney General of the State of New York, New York, NY, for Respondents-Appellants-Cross-Appellees.

SACK, Circuit Judge:

In this appeal from the judgment of the United States District Court for the Southern District of New York (Paul A. Crotty, Judge) granting petitioner

William Cardoza's application[1] for habeas corpus relief under 28 U.S.C. § 2254, we consider whether a state court's decision rejecting Cardoza's ineffective assistance of counsel claims rested on an "unreasonable determination of the facts in light of the evidence presented," id. § 2254(d)(2).

Cardoza was tried and convicted of drug conspiracy and possession charges, and sentenced to forty years to life by a state court judge. On direct appeal and in his motion to vacate the judgment, Cardoza argued that his attorneys had provided ineffective assistance because, among other things, (1) they failed adequately to explain his plea options to him, and (2) his first attorney, Russell Carbone, was a coconspirator in the crime for which Cardoza was being tried and therefore burdened by a conflict of interest. These claims were rejected by the state trial court and the Appellate Division. Cardoza challenged both decisions in his habeas application.

---

[1] Although the document with which the incarcerated person seeks relief under 28 U.S.C. § 2254 is referred to in the statute as an "application," it is nonetheless ordinarily referred to following common-law terminology as a habeas or habeas corpus "petition." See, e.g., Parker v. Matthews, --- U.S. ---, 132 S. Ct. 2148, 2150 (2012) (per curiam) ("Following an unsuccessful state postconviction proceeding, Matthews filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Western District of Kentucky."). Compare, for example, the pre-section 2254 case, Ex parte Hawk, 321 U.S. 114, 115 (1944) (per curiam) ("Petitioner . . . filed in the United States District Court for Nebraska a petition for habeas corpus, alleging matters not previously brought to the attention of the state courts."). We use the terms interchangeably.

The district court, adopting the Report and Recommendation (the "R&R") of a magistrate judge (Ronald L. Ellis, Magistrate Judge), agreed with the state appeals court that the record did not support Cardoza's allegation that Carbone was a coconspirator in the narcotics conspiracy. But the district court also determined, again adopting the magistrate judge's recommendation, that the state trial court that rejected Cardoza's motion to vacate his conviction had misunderstood material aspects of the record, and that Cardoza was entitled to habeas relief because his attorneys had failed to discuss with him a critical plea option that likely would have resulted in a sentence significantly lower than that actually imposed.

On appeal, the respondents challenge the district court's decision granting Cardoza's habeas petition on his claim regarding his counsel's failure to communicate certain plea options. Cardoza cross-appeals from the court's denial of his conflict of interest claim. We conclude that the state court's determination that there is insufficient evidence to support the allegation that Carbone was a coconspirator was not, under section 2254(d)(2), based on an "unreasonable determination of the facts in light of the evidence presented," and therefore affirm the district court's denial of Cardoza's conflict of interest claim. We further conclude that in granting Cardoza's habeas petition on the ground that he

4

was not made aware of a particular plea option, the magistrate judge and district court misread the state court's decision denying that claim. Because we conclude that the state court's finding that Cardoza was made aware of another, more favorable, plea option was not an "unreasonable determination of the facts," we reverse the district court's decision insofar as it grants Cardoza's habeas petition on this ground.

## BACKGROUND

<u>Criminal Proceedings</u>

William Cardoza was a leader of a narcotics trafficking enterprise known as the Juan Carlos Organization (the "Organization"). On June 6, 1997, officers in the New York City Drug Enforcement Task Force ("NYDETF") seized 102 kilograms of cocaine from a garage in Brooklyn, New York, and arrested six persons connected with the Organization. Cardoza retained a lawyer named Russell Carbone to represent five of the six individuals arrested.

On July 3, 1997, NYDETF seized 135 kilograms of cocaine from a garage in Queens, New York, and arrested Cardoza and five others at the scene. NYDETF agents also arrested Cardoza's wife, Consuela Perez, later that day.

Cardoza was charged with two counts of Criminal Possession of a Controlled Substance in the First Degree, in violation of New York Penal Law

§ 220.21(1); two counts of Criminal Possession of a Controlled Substance in the Third Degree, in violation of New York Penal Law § 220.16(1); and one count of Conspiracy in the Second Degree, in violation of New York Penal Law § 105.15. Perez was charged with a single conspiracy count. He retained Carbone to represent him and his wife.

In late August and early September 1997, Cardoza, then represented by Carbone, engaged in three proffer sessions with New York County Assistant District Attorney ("ADA") Lisa Tompkins in which he revealed information about the Organization and his role in it. His cooperation was apparently designed to secure his wife's release on bail and a reduced sentence for her.

At the first such session, ADA Tompkins explained to Cardoza his minimum and maximum sentence exposure. She further made clear that the state was "not making an offer to him of a plea to a lesser charge." Undated Affirmation of New York County Assistant District Attorney Lisa Tompkins ("Tompkins Aff."), at ¶ 8, Joint App'x at 114. Because of Cardoza's leadership role in the Organization and the strength of the case against him, the state had decided to condition any plea agreement that allowed Cardoza to plead to a "lesser charge" upon his cooperation with the prosecution. Id. at ¶ 4, Joint App'x at 113. The state did make non-cooperation "plea offers" to Cardoza's co-

defendants, all of whom played a comparatively minor role in the Organization. Id.

Because she believed Cardoza was interested in cooperating with the prosecution, ADA Tompkins drafted a cooperation agreement between Cardoza and the state.  The draft cooperation agreement required Cardoza to plead guilty to the top count of the indictment -- Criminal Possession of a Controlled Substance in the First Degree, an A-I felony -- and set forth the following sentencing parameters: (1) if Cardoza's cooperation proved fruitless but he did not breach the agreement, he would receive a sentence of seventeen years; (2) if Cardoza adhered to the agreement and his cooperation was helpful, the government would agree to a sentence of less than seventeen years; and (3) if Cardoza breached the agreement, he would receive an indeterminate sentence of twenty-five years to life.  Draft Plea & Cooperation Agreement, Joint App'x at 130-42.  Plea negotiations broke down at the third and final proffer session, however.  Cardoza refused to provide the prosecution with information about others involved in the Organization.  He never entered into a cooperation agreement with the state.

During a calendar call in New York County Supreme Court on September 10, 1997, ADA Tompkins provided Cardoza and his co-defendants

with a "plea letter" setting forth the offers being made to each defendant. According to an affidavit submitted by ADA Tompkins during later collateral proceedings, "[b]ecause [the DA's] office was not making a plea offer as to [Cardoza], the plea letter stated that the People would make a sentencing recommendation to the Court of 17 years to life if [Cardoza] chose to plead to the top count of the indictment before trial."[2] Tompkins Aff. at ¶ 5, Joint App'x at 113.

In mid-September 1997, Cardoza terminated Carbone as his counsel and hired Lawrence Herrmann in Carbone's stead. In a short affidavit filed by Herrmann in collateral proceedings before the state court, he recalled "discussing alternatives" with Cardoza, who was "never pleased and seemingly unable to accept the gravity of the allegations." Affidavit dated July 26, 2007, of Lawrence M. Herrmann ("Herrmann Aff."), at ¶ 9, Joint App'x at 119. Herrmann remembered a "plea offer from the [prosecutor] of a plea to an A-I felony with a recommended sentence of some 18 years to life, rather than the 25 to life he would face after a lost trial," but could recall "no indication of interest in the plea" on Cardoza's part. Id. at ¶¶ 10-11, Joint App'x at 119.

---

[2] The state was unable to locate a copy of this "plea letter" during the course of collateral proceedings before the state courts. Id.

8

In April 1998, Cardoza released Herrmann and replaced him with Christopher Chan. ADA Tompkins recalled discussing the sentencing recommendation set forth in the "plea letter" with Chan. Tompkins Aff. at ¶ 11, Joint App'x at 116-17. In June 1998, ADA Tompkins was preparing to take a maternity leave. She turned the prosecution of the case over to Assistant District Attorney Joseph DePadilla.

ADA DePadilla stated that he "reviewed with Mr. Chan the earlier offer to plead guilty to the top count of the indictment with a sentencing recommendation of 17 years to life." Affirmation dated Sept. 5, 2007, of Assistant District Attorney Joseph DePadilla ("DePadilla Aff."), at ¶ 4, Joint App'x at 111. ADA DePadilla told Chan that this sentencing recommendation "offer" would expire on July 31, 1998. Id. When Cardoza did not agree to plead guilty by that date, DePadilla sent Chan a memorandum titled "Plea offer for William Cardoza a/k/a Juan Carlos a/k/a Tony," which read:

> As per our discussion on July 22, 1998, the offer to William Cardoza of 17 years to life is withdrawn as of today. There will be no other offers in this case. If the defendant chooses to plea on the day of trial the People will insist the defendant plea to the entire indictment and the People's recommendation for sentence will be an appropriate number between 20 and 25 years to life.

9

Mem. from Assistant District Attorney Joseph DePadilla to Christopher Chan, Esq. (July 31, 1998) ("DePadilla Memo"), Joint App'x at 129.

In September 1998, Cardoza fired Chan and hired his fourth and (for the purposes of the trial proceedings) final lawyer, Irving Anolik. After trial, a jury convicted Cardoza on all of the conspiracy and possession counts. On March 31, 1999, the trial court (Bonnie G. Wittner, <u>Justice</u>) sentenced Cardoza to an indeterminate prison term of 40 years to life. His direct appeal was denied. <u>People v. Cardoza</u>, 22 A.D.3d 428, 803 N.Y.S.2d 65 (1st Dep't 2005). So too was his application for leave to appeal to the New York Court of Appeals. <u>People v. Cardoza</u>, 6 N.Y.3d 810, 845 N.E.2d 1281, 812 N.Y.S.2d 450 (2006) (Ciparick, <u>Judge</u>). In June 2006, Cardoza was resentenced under New York State's Drug Law Reform Act to a term of thirty years to life.

<u>Section 440 Proceedings</u>

Shortly thereafter, in September 2006, Cardoza obtained and examined a "Case Information Sheet" purporting to list the "offers" extended to Cardoza and his co-defendants. Below the "offer" column next to Cardoza's name was handwritten "17-life."

Cardoza then filed a pro se motion to vacate the judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. He initially

took the position that the only "offer" he knew about was the proposed cooperation agreement; the newly discovered Case Information Sheet, he contended, revealed that the state had made a non-cooperation plea offer of "17 to life," which he alleged had never been communicated to him by counsel. He argued that his lawyers' failure to convey to him this non-cooperation plea offer of seventeen years to life constituted ineffective assistance of counsel. Cardoza also argued that Carbone provided ineffective assistance because Carbone himself was involved in the drug conspiracy, and therefore had a conflict of interest.

In its response to the section 440.10 motion, the State maintained that it had never offered the defendant a "plea bargain" that did not require his cooperation, and that the "17 years to life" was not a "plea offer," but simply a "recommendation to the Court if [Cardoza] sought to plead guilty to the top count prior to trial." Affirmation dated February 14, 2007, of Assistant District Attorney Susan Krischel,[3] at ¶ 53; Pet'r's Br. at 20-21 (quoting Krischel

---

[3] The relevant portion of the affirmation submitted by ADA Krischel in the section 440.10 proceedings was omitted, accidentally it seems, from filings before the district court. Before the parties filed their briefs on appeal, we granted Cardoza's motion, made with the consent of the respondents, to submit the omitted portions of the affirmation. ADA Krischel was part of the Office of the Special Narcotics Prosecutor for the City of New York and was assigned to respond to Cardoza's pro se motion to vacate his conviction.

Affirmation). ADA Tompkins would later aver, similarly, that the State never intended to make Cardoza a non-cooperation "plea offer," in the sense of "an offer to him of a plea to a lesser charge." Tompkins Aff. at ¶¶ 4, 8, Joint App'x at 113-14.

The State's representation in response to his motion apparently caused Cardoza, at this point represented by counsel, to pivot toward a new position. Cardoza abandoned his argument that his lawyers had failed to tell him about a cooperation-free plea option of seventeen years, and instead asserted that such an option had in fact never been available to him, and that his lawyers' deficiency was that they failed to explain to him that he had a right, under New York law, to plead guilty to the entire indictment before trial, see N.Y. Crim. Proc. Law § 220.10(2). This option would not have required him to cooperate with authorities and could have resulted in a lighter sentence, he argued, so his lawyers' failure to present it to him caused him prejudice.

The New York County Supreme Court Justice who had presided at trial denied Cardoza's section 440.10 motion without a hearing. People v. Cardoza, Sup. Ct., NY County, Oct. 4, 2007, Wittner, J., Indictment No. 5504/97. With respect to a "plea offer," the court found that the prosecution "never offered [Cardoza] a plea as that term is commonly understood once he indicated he was

12

unwilling to cooperate.  Rather, they indicated on numerous occasions in open court in front of defendant and in writing that if defendant ple[d] guilty to the top count of the indictment they would recommend a sentence of 17 years to life." Id. at 8.  The court went on to conclude that "[s]ince an offer of 17 (or possibly 18) years was 'on the table,' discussion of a plea to the entire indictment is, in any case, irrelevant."  Id.

With respect to the conflict of interest claim, the state court concluded that it was barred by New York Criminal Procedure Law § 440.10(2)(a)[4] because it was raised and determined on the merits in Cardoza's direct appeal, and that, in any event, the claim could not succeed because Cardoza could not show any "adverse impact" from the alleged conflict.  Id. at 7. The Appellate Division affirmed the judgment on appeal, People v. Cardoza, 56 A.D.3d 396, 869 N.Y.S.2d 844 (1st Dep't 2008), and Cardoza's application for leave to appeal to the Court of Appeals was denied, 12 N.Y.3d 781, 906 N.E.2d 1092, 879 N.Y.S.2d 58 (2009) (Ciparick, Judge).

---

[4]      New York Criminal Procedure Law § 440.10(2)(a) provides that a "court must deny a motion to vacate a judgment when . . . [t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment."  The Appellate Division had denied Cardoza's conflict of interest claim on direct appeal.  People v. Cardoza, 22 A.D.3d 428, 429, 803 N.Y.S.2d 65, 66 (1st Dep't 2005).

Cardoza timely filed a habeas application in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 2254. He claimed that he had been denied the effective assistance of counsel because none of his attorneys informed him of his right to plead guilty to the entire indictment pursuant to New York Criminal Procedure Law § 220.10(2). He also asserted that Carbone provided ineffective assistance because, as a coconspirator, Carbone's representation was burdened by a per se conflict of interest.

On December 30, 2010, Magistrate Judge Ellis issued the R&R, Cardoza v. Rock, No. 08-Civ-8210, 2010 WL 7597717, 2010 U.S. Dist. LEXIS 143834 (S.D.N.Y. Dec. 30, 2010), recommending that the district court grant the petition as to Cardoza's claim that his attorneys had failed to explore non-cooperation plea options, and remand to the state court to vacate the conviction and resentence Cardoza to a sentence of no more than twenty-five years, the high end of the range referenced in ADA DePadilla's memorandum of July 31, 1998.

The magistrate judge noted that Cardoza's lawyers had a constitutional duty to inform Cardoza about his right to plead guilty to the entire indictment and receive a recommended sentence of twenty to twenty-five years. Because there was no evidence in the record that any of Cardoza's lawyers

14

discussed this option with him -- and because his sentence after trial was considerably longer than the twenty to twenty-five years he would have received -- the magistrate judge concluded that Cardoza had indeed been denied the effective assistance of counsel.

The lynchpin of the magistrate judge's decision was his determination that in denying the section 440.10 motion, the state court had confused the proffered cooperation agreement -- which offered seventeen years for fruitless cooperation and fewer years for helpful cooperation -- with the section 220.10(2) option to plead to the entire indictment. The magistrate judge concluded that the state court had therefore erroneously denied Cardoza's motion on what it thought was the accurate-but-irrelevant fact that Cardoza had been informed about the cooperation offer. Because the basis of Cardoza's claim was that he was not willing to cooperate and was never informed of his right to plead pursuant to section 220.10(2) -- his only plea option that did not require cooperation -- the magistrate judge determined that the state court had failed to analyze the ineffective assistance claim properly.

The magistrate judge recommended denying relief based on Carbone's alleged conflict of interest, concluding that Cardoza's proffered evidence was "speculative" and "even if true, would not be enough to support a

15

finding of a per se conflict of interest." Id. at *12, 2010 U.S. Dist. LEXIS 143834, at *34.

On September 27, 2011, the district court adopted the R&R in full, despite objections by both sides, but amended the remedy to lift the requirement that Cardoza be sentenced to twenty-five years. Cardoza v. Rock, No. 08-Civ-8210, 2011 WL 4472030, 2011 U.S. Dist. LEXIS 109672 (S.D.N.Y. Sept. 27, 2011). The respondents moved for reconsideration, arguing that the court had overlooked the fact that prosecutors had offered Cardoza the opportunity to plead guilty to the top count of the indictment in exchange for a sentencing recommendation of seventeen years to life, without requiring that he cooperate. The district court denied the motion, concluding that the respondents had waived this argument when they failed to raise it in the proceedings before the magistrate judge. Order Den. Mot. for Recons., Feb. 3, 2012, Dist. Ct. ECF No. 32.

The respondents now appeal the portion of the district court's order granting Cardoza's habeas application on the ground that he received ineffective assistance of counsel because his attorneys failed to inform him of his option to plead guilty to the entire indictment. Cardoza cross-appeals the denial of his claim of ineffective assistance of counsel on the ground that Carbone had a conflict of interest.

16

## DISCUSSION

We review the district court's grant of an application for a writ of habeas corpus de novo, Overton v. Newton, 295 F.3d 270, 275 (2d Cir. 2002), and its underlying findings of fact for clear error, Clark v. Perez, 510 F.3d 382, 389 (2d Cir. 2008).

I.      Review Under The Antiterrorism and Effective Death Penalty Act of 1996

Our review of Cardoza's habeas application is governed by the principles set forth in section 2254 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under that section, when "a person in custody pursuant to the judgment of a State court" raises a claim that was "adjudicated on the merits in State court proceedings," relief may be granted only where the state court's decision was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). Our review under AEDPA is "highly deferential" to the state courts, "demand[ing] that state-court decisions be given the benefit of the doubt." Hardy v. Cross, — U.S. ——, 132 S.Ct. 490, 491 (2011) (per curiam) (internal quotation marks omitted).

Cardoza argues that the state court's rejection of his claim that he was denied effective assistance because his attorneys failed to inform him of his right to plead guilty to the entire indictment was based on an "unreasonable determination of the facts in light of the evidence" before the state court.[5] The Supreme Court has made clear that a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). Where "[r]easonable minds reviewing the record might disagree" as to the relevant finding, that is not sufficient to supplant the state court's factual determination. Rice v. Collins, 546 U.S. 333, 341-42 (2006). Nevertheless, the state

---

[5] This Court -- and most other federal courts including the Supreme Court -- has had fewer opportunities to consider what constitutes an "unreasonable determination of the facts" under section 2254(d)(2) than we have had to address the "contrary to, or involved an unreasonable application" of federal law prong of section 2254(d)(1). Complicating matters somewhat is 28 U.S.C. § 2254(e)(1), which provides that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." The Supreme Court has yet to explain how these two provisions interact, specifically whether § 2254(e)(1) applies in every case in which a petitioner brings a challenge under § 2254(d)(2). See Wood v. Allen, 558 U.S. 290, 300-01 (2010) (declining to decide the issue). This Circuit has not resolved the question. See Jones v. Murphy, 694 F.3d 225, 238 n.4 (2d Cir. 2012), cert. denied, 133 S. Ct. 1247 (2013).

Without answering this question, we will review Cardoza's challenge under § 2254(d)(2)'s unreasonableness standard. We need not consider the application of the more stringent "clear and convincing evidence" standard under § 2254(e)(1), inasmuch as, even under the broader provisions of § 2254(d)(2), we conclude that the state court's decision was not based on an unreasonable determination of the facts.

court's finding might represent an "unreasonable determination of the facts" where, for example, reasonable minds could not disagree that the trial court misapprehended or misstated material aspects of the record in making its finding, see Wiggins v. Smith, 539 U.S. 510, 528 (2003), or where the court ignored highly probative and material evidence, see Miller-El v. Cockrell, 537 U.S. 322, 346 (2003).

Of course, AEDPA "sets forth a precondition to the grant of habeas relief . . . , not an entitlement to it," Fry v. Pliler, 551 U.S. 112, 119 (2007), so even if the standard set forth in section 2254(d)(2) is met, the petitioner still "bears the ultimate burden of proving by a preponderance of the evidence that his constitutional rights have been violated," Epps v. Poole, 687 F.3d 46, 50 (2d Cir. 2012).

II. Ineffective Assistance With Respect to Communication of Plea Options

Cardoza's argument that his attorneys provided him with ineffective assistance because they failed to convey the full range of his plea options to him is governed by the legal principles laid out in Strickland v. Washington, 466 U.S. 668 (1984). In order to establish an ineffective assistance claim, a petitioner must

show that counsel's performance was deficient, and that the deficiency prejudiced the defense. Id. at 687.

"'The decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in any criminal case . . . . [C]ounsel may and must give the client the benefit of counsel's professional advice on this crucial decision.'" Boria v. Keane, 99 F.3d 492, 496-97 (2d Cir. 1996) (quoting Anthony G. Amsterdam, TRIAL MANUAL 5 FOR THE DEFENSE OF CRIMINAL CASES (1988)) (emphases omitted). It is well-settled that defense counsel have a "constitutional duty" to convey any plea offers from the government and to advise their clients on the "crucial decision" whether to accept a plea offer. Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003) (citing Boria, 99 F.3d at 498). A significant disparity between the sentence the defendant might have received had he pled guilty, and the sentence he received after trial, provides objective evidence that a defendant was prejudiced by his attorney's failure to adequately inform him of his plea options. See id. at 182-83.

### A. Guilty Pleas Under New York Law

New York Criminal Procedure Law § 220.10 provides that a defendant may enter the following pleas to a criminal indictment:

1. The defendant may as a matter of right enter a plea of "not guilty" to the indictment.

2. Except as provided [elsewhere in the statute], the defendant may as a matter of right enter a plea of "guilty" to the entire indictment.

3. Except as provided [elsewhere in the statute], where the indictment charges but one crime, the defendant may, with both the permission of the court and the consent of the people, enter a plea of guilty of a lesser included offense.

4. Except as provided [elsewhere in the statute], where the indictment charges two or more offenses in separate counts, the defendant may, with both the permission of the court and the consent of the people, enter a plea of:

(a) Guilty of one or more but not all of the offenses charged; or

(b) Guilty of a lesser included offense with respect to any or all of the offenses charged; or

(c) Guilty of any combination of offenses charged and lesser offenses included within other offenses charged.

As the statute makes clear, certain types of pleas, those under section 220.10(3) and (4), require the consent of the prosecution and the permission of the court. By contrast, a plea under section 220.10(1) -- a plea of not guilty -- and section 220.10(2) -- a plea of guilty to the entire indictment -- may be entered as a matter of right. Cardoza asserts that none of his lawyers informed him that he

had the right to plead guilty to the entire indictment pursuant to section 220.10(2).

A source of confusion in this case has been the use of the term "plea offer" (and similar terms, like "plea deal" or "plea bargain"), and its meaning as it is commonly understood by New York practitioners. A "plea offer" -- at least as that term is employed by the prosecution and the state judge in this case -- includes an agreement between the prosecution and the defendant, with the permission of the court, to plead to a lesser included charge, perhaps with assurances from the court as to the eventual sentence. See Resp'ts' Br. at 23; People v. Cardoza, Sup. Ct., NY County, Oct. 4, 2007, Wittner, J., Indictment No. 5504/97, at 8.

By contrast, an agreement that the prosecution will recommend a specific sentence in exchange for the defendant's plea to the top count of the indictment is not -- at least according to the respondents and for our purposes here -- considered a true "plea offer." Despite this, it seems that both the lawyers and the state court use or have used the term "plea offer" or "offer" to refer informally to any conditions attached to the prosecution's consent to a certain plea. While this may not present a problem in state court, where both the attorneys and the judges understand to what they are referring, it seems to have

generated substantial confusion in this case, where federal courts are called upon to review and interpret a New York State court record in which all of the parties have, at various times, referred to a sentencing recommendation as a "plea offer" or "offer."

**B.** **Analysis**

Cardoza maintains that his only options in the face of the indictment were: (1) cooperate and receive a reduced sentence pursuant to the cooperation agreement; (2) plead guilty to the entire indictment pursuant to section 220.10(2) and receive a reduced sentence; or (3) go to trial. Cardoza was unwilling to cooperate with the prosecution because of the danger it would pose for him and his family. He contends that none of his four attorneys informed him of his second option, the right to plead to the entire indictment under section 220.10(2). Cardoza asserts that he was therefore under the mistaken impression that his only option was to proceed to trial.

The magistrate judge and district court agreed with Cardoza that this failure on the part of his lawyers constituted ineffective assistance of counsel because he should have been told about his right to plead guilty to the entire indictment pursuant to section 220.10(2) and because, had he entered such a plea before trial, he likely would have received a sentence far shorter than what he

23

received following his conviction at trial. To the degree that the state court concluded otherwise, the magistrate judge found that the state court had confused the cooperation agreement with the section 220.10(2) plea option and had failed to analyze the true basis of Cardoza's claim, which was that he was never informed of his right to plead pursuant to section 220.10(2). Cardoza v. Rock, 2010 WL 7597717, at *9-*10, 2010 U.S. Dist. LEXIS 143834, at *23-*30. Because only the section 220.10(2) option did not require Cardoza's cooperation, the magistrate judge reasoned, it was not enough that Cardoza was aware of and rejected an offer to cooperate in exchange for a reduced sentence. Cardoza's attorneys also had a duty to "convey and explore the section 220.10(2) plea option" that was available to him. Id. at *10, 2010 U.S. Dist. LEXIS 143834, at *27.

A review of the record strongly suggests that the magistrate judge and district court misunderstood the factual basis for the state court's decision. Cardoza was plainly unwilling to agree to (and in fact to) cooperate with the state. As Cardoza points out, a plea of guilty to the entire indictment pursuant to section 220.10(2) would not require him to cooperate. Cardoza's argument -- that counsel was defective for failing to inform him of this right to plead guilty to the entire indictment -- depends upon the factual premise that Cardoza was not made aware of a more favorable plea option that also did not require

cooperation. If Cardoza was made aware of such a cooperation-free option and he rejected it, then his argument falls apart: counsel could hardly be deficient for failing to convey the section 220.10(2) option if that option was less favorable in all respects than a plea option Cardoza had been unwilling to accept.

The existence of such an option appears to be just what the state court found. Justice Wittner's opinion stated that -- in addition to offering the cooperation agreement that Cardoza rejected –- the prosecution also had informed at least three of Cardoza's attorneys and stated in open court that it would be willing to recommend a sentence of seventeen years to life if Cardoza pleaded guilty to the top count of the indictment. In other words, the state court found that Cardoza was presented with the option under section 220.10(4)(a) of a plea to less than all of the counts in the indictment -- an option that would not have required him to cooperate -- and he rejected it. Id.

We think this is clear from the state court's opinion denying Cardoza's section 440 motion. The court explicitly found that the prosecution "indicated on numerous occasions in open court in front of the defendant and in writing that if [Cardoza] ple[d] guilty to the top count of the indictment they would recommend a sentence of 17 years to life." People v. Cardoza, Sup. Ct., NY County, Oct. 4, 2007, Wittner, J., indictment No. 5504/97, at *8. The court

25

noted that "the People never offered [Cardoza] a plea <u>as that term is commonly understood</u> once he indicated he was unwilling to cooperate." <u>Id.</u> (emphasis added). By that we understand the court to have meant that, absent cooperation, the prosecution would not consent to a plea to a <u>lesser</u> charge. The state court found, however, that the prosecution had agreed to recommend a specific sentence in exchange for a plea to the top count of the indictment.

The state court then stated, in a manner that we find somewhat confusing, that "[s]ince an <u>offer</u> of 17 . . . years was 'on the table,' discussion of a plea to the entire indictment is, in any case, irrelevant." <u>Id.</u> (emphasis added). Thus, although the court distinguishes a true "plea offer" from the sentencing recommendation option offered by the prosecution, it then proceeded to refer to the sentencing recommendation as an "<u>offer</u> of 17 . . . years." (emphasis added). This imprecise use of the term "offer" to describe anything from a cooperation agreement to a sentencing recommendation appears throughout the record in this case; we suppose it was this that led the magistrate judge and district court to misunderstand the state court opinion.[6]

---

[6] For instance, the prosecution insisted that it "was not making a plea offer as to [Cardoza]." Tompkins. Aff at ¶ 5, Joint App'x at 113. Yet on July 31, 1998, ADA DePadilla sent Chan a memorandum entitled: "<u>Plea offer</u> for William Cardoza a/k/a Juan Carlos a/k/a Tony," that stated:

But contrary to what both thought had occurred, the state court

concluded that a plea under section 220.10(2) was irrelevant not because Cardoza

also had available to him a cooperation agreement, but because the prosecution

had already informed Cardoza that it would be willing to recommend a sentence

of seventeen years in exchange for a plea to the top count only, without any

cooperation from Cardoza. That was plainly a better option for him than to

exercise the right he had to plead to <u>all</u> counts under section 220.10(2), which

would have resulted in a higher sentence. We therefore conclude that if in fact

Cardoza was made aware of a non-cooperation option to plead guilty to the top

---

> As per our discussion on July 22, 1998, the <u>offer</u> to William
> Cardoza of <u>17 years to life</u> is withdrawn as of today. There
> will be no other <u>offers</u> in this case. If the defendant chooses
> to plea on the day of trial the People will insist the defendant
> plea to the entire indictment and the People's
> recommendation for sentence will be an appropriate number
> between 20 and 25 years to life."

DePadilla Memo, Joint App'x at 129 (emphases added).

A reviewing court unfamiliar with the fluid use of the terms "plea offer" or "offer" by state practitioners could easily read the word "offer" here to refer to the cooperation agreement, particularly since both the prosecution and the state court noted that no "plea offer" was being made to Cardoza absent his cooperation. Read that way, it creates the impression that the government would only consent to a reduced sentence if Cardoza either (1) cooperated or (2) pled guilty to the entire indictment. This is apparently how the magistrate judge understood this exchange. See Cardoza, 2010 WL 7597717, at *10, 2010 U.S. Dist. LEXIS 143834, at *25. As is now reasonably clear, DePadilla was referring in this memorandum to a third option -- a plea to the top count in exchange for a seventeen-year sentence recommendation.

count in exchange for a sentencing recommendation of seventeen years, the question of whether he was also apprised of his right to plead guilty to the entire indictment is, indeed, "irrelevant."[7]

The remaining consideration is whether the state court's determination that Cardoza was made aware of a cooperation-free sentencing recommendation option was an "unreasonable determination of the facts in light of the evidence presented." We conclude that it was not. The state court relied on the following evidence: (1) its own recollection that the prosecution "indicated on numerous occasions in open court in front of [Cardoza]" that he could plead guilty to the top count and receive a seventeen-year sentence recommendation without any requirement that he cooperate; (2) ADA DePadilla's statement that he discussed the seventeen-year sentencing recommendation with Chan; (3) the July 31 memorandum from ADA DePadilla to Chan reflecting discussion of a

---

[7] Following a motion for reconsideration in which the respondents make this very argument, the district court denied the motion on the ground that the respondents had failed to make this objection to the R&R and had thereby waived the argument. Order Den. Mot. for Recons., Feb. 3, 2012, Dist. Ct. ECF No. 32. "We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object. The rule is enforced under our supervisory powers and 'is a nonjurisdictional waiver provision whose violation we may excuse in the interest of justice.'" United States v. Male Juvenile, 121 F.3d 34, 38-39 (2d Cir. 1997) (citations omitted). While the record is somewhat unclear on this issue, assuming the objection was not properly raised, under the circumstances of this appeal, we excuse any failure to object "in the interest of justice."

plea to the top count in exchange for a sentence recommendation of seventeen years; (4) Hermann's recollection in his affidavit of a "plea offer from the [prosecutor] of a plea to an A-I felony with a recommended sentence of some 18 years to life" in which Cardoza showed "no indication of interest"; and (5) ADA Tompkins' statements in her affirmation that she informed defense counsel orally and in writing of the State's willingness to recommend seventeen years in exchange for a plea to the top count of the indictment. Id. at 5-6, 8-9.

We acknowledge that the factual record with regard to the plea negotiations is sparse and is complicated by the confusing use of the term "offer." From our perspective, it seems that much of this confusion could have been avoided had a hearing been held somewhere along the path to this appeal –- at the state or federal level –- in which defense counsel and the prosecution testified as to their recollection of what precisely occurred during plea negotiations in this case. This would have allowed for a more complete record for review and helped to clarify what exactly the prosecution "offered" to Cardoza before trial.

Nevertheless, AEDPA sets a high bar for a federal court considering a section 2254 habeas application. Although we find the record unfortunately thin, the state court's determination that Cardoza was aware of his option to plead guilty to the top count of the indictment in exchange for a sentencing

recommendation of seventeen years, without any requirement that he cooperate, is a reasonable one in light of the evidence before it. As we have discussed, neither the magistrate judge nor the district court seemed to have considered the state court's finding that Cardoza was made aware of the top-count sentencing recommendation option. In light of the foregoing evidence, however, we cannot say that the state court's conclusion represents an "unreasonable determination of the facts" for the purposes of 28 U.S.C. § 2254(d)(2).

Cardoza argues that the state court's determination was erroneous because the court "failed to grasp" that any references in the record to a "sentencing recommendation" of seventeen years pertain to the plea offer made per the cooperation agreement, and therefore his only cooperation-free plea option was a plea to the entire indictment pursuant to section 220.10(2). Cardoza relies on the confusion surrounding the use of the term "plea offer" in the record -- an issue we have already addressed at some length. The state court found, however, that the sentencing recommendation did not require cooperation and that Cardoza was aware of this plea option. Because this conclusion is not an unreasonable one, AEDPA requires us to reject Cardoza's claim that he received ineffective assistance with respect to his plea options.

We therefore reverse the judgment of the district court with respect to this claim.

### III.  Ineffective Assistance with Respect to Conflict of Interest

Cardoza cross-appeals from the district court's denial of his second ineffective assistance of counsel claim, predicated on the allegation that Carbone was involved in Cardoza's criminal conspiracy and therefore was burdened by a per se conflict of interest.

Where a criminal defendant has a Sixth Amendment right to counsel, he also has a "correlative right to representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 271 (1981).  Although a defendant who raised no objection at trial must generally "demonstrate that an actual conflict of interest adversely affected his lawyer's performance," Cuyler v. Sullivan, 446 U.S. 335, 348 (1980), a defendant need not make such a showing if the circumstances of the representation gave rise to a per se conflict of interest, see Holloway v. Arkansas, 435 U.S. 475, 488-91 (1978).  We have observed that the per se rule applies "when an attorney is implicated in the crimes of his or her client" because "the attorney cannot be free from fear that a vigorous defense should lead the prosecutor or the trial judge to discover evidence of the attorney's

31

own wrongdoing." United States v. Fulton, 5 F.3d 605, 611 (2d Cir. 1993)(internal quotation marks omitted).[8]

In his direct appeal, Cardoza argued that Carbone, who represented Cardoza for some eleven weeks during the early stages of the prosecution, was burdened by a conflict of interest because, among other things, Carbone himself participated in the drug conspiracy. The Appellate Division rejected Cardoza's claim, finding that "[t]he record does not support defendant's arguments that counsel was a coconspirator in his crimes." Cardoza, 22 A.D.3d at 429, 803 N.Y.S.2d at 66. And in denying his habeas petition on this ground, the district court noted that Cardoza provides only "minimal and speculative evidence" that Carbone was involved in the criminal conspiracy. Cardoza, 2011 WL 4472030, at *7, 2011 U.S. Dist. LEXIS 109672, at *20.

In support of his argument, Cardoza first contends that after agents seized cocaine and made arrests at the Brooklyn garage, he hired Carbone and

---

[8]    The Supreme Court has, however, recognized a per se conflict of interest in only one circumstance -- "where defense counsel is forced to represent codefendants over his timely objection," Mickens v. Taylor, 535 U.S. 162, 168 (2002) -- and has declined to extend the per se rule to other potential conflicts, see id. at 173-74. Insofar as Cardoza argues that the state court's decision denying this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1)(emphasis added), that argument clearly fails.

directed him to check the garage for cocaine that may have been overlooked, or for signs that the police had dusted for fingerprints. As the respondents point out, however, the wiretap evidence on which Cardoza relies for his assertion that Carbone went to the garage is ambiguous at best. Moreover, it is not clear that visiting the garage on behalf of a client to see what evidence was seized would necessarily implicate Carbone in the criminal conspiracy.

Cardoza also alleges that Carbone advised him to disconnect his telephone line and install a new line through which they could communicate. The only evidence in the record to support this allegation is a statement in Cardoza's affidavit to that effect. Affirmation dated May 15, 2007, of William Cardoza, at ¶ 7, Joint App'x at 125. And again, a lawyer is not necessarily a coconspirator simply because he advises his client on ways to protect their communications from law enforcement.

Finally, Cardoza asserts that Carbone interfered with an attempt to obtain new counsel for a coconspirator in order to prevent him from cooperating with the prosecution. In considering this allegation, the Appellate Division concluded that "[a]t most, the record indicates counsel's interference, at the behest of defendant, with a potential change of counsel by one of defendant's associates . . . ." Cardoza, 22 A.D.3d at 429, 803 N.Y.S.2d at 66. Even if Cardoza's

allegation were true, he fails to show how it would prove that Carbone was part of the drug conspiracy.

Without more to support his claim, the finding by the Appellate Division that there was insufficient evidence that Carbone was a coconspirator was not an "unreasonable determination of the facts" and is entitled to deference by this court. We therefore affirm the district court's denial of that claim.

## CONCLUSION

For the foregoing reasons, we reverse the district court's judgment granting Cardoza's habeas corpus application on the ground that he received ineffective assistance with respect to his plea options. We affirm the district court's denial of Cardoza's ineffective assistance claim with respect to a purported per se conflict of interest by counsel.