******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ALISON BARLOW *v.* COMMISSIONER
OF CORRECTION
(AC 34925)

Beach, Bear and Sheldon, Js.*

*Argued February 6—officially released June 10, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Sferrazza, J.)

*Naomi T. Fetterman*, assigned counsel, with whom,
on the brief, was *Aaron J. Romano*, for the appellant
(petitioner).

*Mitchell S. Brody*, senior assistant state's attorney,

with whom, on the brief, were *Maureen Platt*, state's attorney, and *Eva B. Lenczewski*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

BEAR, J. The petitioner, Alison Barlow, appeals from the judgment of the habeas court dismissing in part and denying in part his third petition for a writ of habeas corpus. On appeal, the petitioner claims: (1) the court erred in denying his claim that counsel for his second habeas appeal, Christopher M. Neary, provided ineffective assistance by withdrawing the petitioner's claims of ineffective assistance of counsel concerning the petitioner's criminal trial attorney, Sheridan L. Moore; (2) the court erred in dismissing his claim that Moore had provided ineffective assistance by improperly concluding that the doctrine of deliberate bypass applied to bar that claim; (3) Moore rendered deficient performance during the petitioner's criminal proceedings by failing to advise the petitioner adequately regarding the court's plea offer; and (4) although the habeas court made no findings concerning prejudice, we should presume prejudice on the basis of the record and order that the petition for a writ of habeas corpus be granted and that the court be ordered to give the petitioner the opportunity to plead guilty under the plea agreement he previously was offered by the trial court. We agree with the petitioner's second and third claims, and, on this basis, conclude that it is unnecessary to consider his first claim. We do not agree with his fourth claim, however, and thus conclude that the case must be remanded to the habeas court for further findings on the issue of prejudice.[1] Accordingly, the judgment is reversed in part, and the case is remanded to the habeas court.

The record reveals the following relevant facts and procedural history. The petitioner had been charged with several serious crimes, including attempt to commit murder and conspiracy to commit murder. He was offered a "one time" plea deal by the court that included a sentence of nine years to serve. The petitioner instead wanted a deal that would require him to serve only six years incarceration. The court informed him that the deal it offered was good for one day only, after which his case would be placed on the trial list. The petitioner did not accept the court's offer at that time. The offer, however, ultimately remained in effect for approximately one year before it was withdrawn. The petitioner was tried by a jury and found guilty of the charges. He was given a total effective sentence of thirty-five years incarceration.[2] His conviction was upheld on appeal. See *State* v. *Barlow*, 70 Conn. App. 232, 797 A.2d 605, cert. denied, 261 Conn. 929, 806 A.2d 1067 (2002).

In his first habeas petition, the petitioner, initially acting in a self-represented capacity, alleged that his trial counsel, Moore, was ineffective, inter alia, in failing to counsel him fully regarding the time limitation on the availability of the trial court's plea offer. His appointed counsel, Peter Tsimbidaros, then amended the first

habeas petition and withdrew the ineffective assistance claim concerning Moore. The first habeas petition was not successful.

The petitioner, again initially acting in a self-represented capacity, filed a second habeas petition alleging that Moore had been ineffective, and that Tsimbidaros had been ineffective by withdrawing the claim concerning Moore from the first habeas petition. Appointed counsel, Neary, then filed an amended petition, withdrawing those claims. This second habeas petition was denied, and the habeas court, thereafter, denied the petition for certification to appeal. We dismissed the petitioner's appeal from that judgment after concluding that the court did not abuse its discretion in denying the petition for certification to appeal. See *Barlow* v. *Commissioner of Correction*, 131 Conn. App. 90, 26 A.3d 123, cert. denied, 302 Conn. 937, 28 A.3d 989 (2011).

The present appeal concerns the petitioner's third habeas petition. In it, he alleges that Moore was ineffective, and that Neary was ineffective in amending the second habeas petition to withdraw his ineffective assistance claims concerning Tsimbidaros and Moore. The habeas court determined that the petitioner's first claim, which was based on the alleged ineffective assistance of Moore, had been deliberately bypassed, and, therefore, the court dismissed the first count of the petition. As to the second count, the court determined that the petitioner failed to prove that Neary had been ineffective by withdrawing the claims concerning Tsimbidaros and Moore. In considering the claim concerning Neary, however, the court necessarily examined whether there was merit to the petitioner's claim that Moore had been ineffective. The court specifically found that "Moore fully apprised the petitioner as to the terms of the plea offer, including its temporary nature, the strengths and weaknesses of the prosecution and defense cases, and the possible outcomes after trial." It also found that "Neary averred that he examined Moore's performance for the petitioner's defense and found no basis for such an ineffective assistance claim [concerning] her." The court concluded that the petitioner had failed to prove that "Moore was deficient in any of the ways alleged . . . [or] that Attorney Neary or Attorney Tsimbidaros rendered ineffective assistance by withdrawing the claims [concerning] Moore . . . ." Accordingly, the court denied the petition as to the second count. The court granted certification to appeal, and this appeal followed.

I

We first consider the petitioner's claim that the court improperly applied the doctrine of deliberate bypass to his claim that Moore's assistance was ineffective with respect to the court's plea offer. He argues that the doctrine of deliberate bypass does not apply to ineffective assistance of counsel claims in habeas proceedings,

but that it applies only to claims that should have been raised on direct appeal but were deliberately bypassed. He further argues that the respondent, the Commissioner of Correction, never raised this claim before the habeas court and that our case law has established that the deliberate bypass doctrine automatically becomes inapplicable when a claim of ineffective assistance of counsel is raised. The respondent argues that the doctrine applies in this instance because the petitioner knowingly and voluntarily declined to pursue his claim concerning Moore by permitting Neary to withdraw that claim.[3] The respondent also argued during appellate oral argument that, although it neither raised nor argued the doctrine of deliberate bypass before the habeas court, the court was within its authority to raise the doctrine sua sponte. We need not decide whether the doctrine *could apply* in this instance because we conclude that the court improperly raised the doctrine sua sponte.[4]

Practice Book § 23-30 (b) provides, in relevant part, that the respondent's return "*shall allege* any facts in support of any claim of procedural default, abuse of the writ, or any other claim that the petitioner is not entitled to relief." (Emphasis added.) In *Fine* v. *Commissioner of Correction*, 147 Conn. App. 136, 141, 81 A.3d 1209 (2013), we recently explained that the doctrine of deliberate bypass "historically has arisen in the context of habeas petitions involving claims procedurally defaulted at trial and on appeal. See *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 186, 982 A.2d 620 (2009) (observing that since *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 132, 629 A.2d 413 [1993], our Supreme Court 'consistently and broadly has applied the cause and prejudice standard to trial level and appellate level procedural defaults in habeas corpus petitions')."

"If the respondent claims that the petitioner should have raised the issue [previously] . . . the claim [of procedural default] *must be raised in the return or it will not be considered at the* [*habeas*] *hearing*." (Emphasis added.) W. Horton & K. Knox, 1 Connecticut Practice Series: Connecticut Superior Court Civil Rules (2013-2014 Ed.) Rule 23-30, official comments, p. 1031. "[T]he plain language of Practice Book § 23-30 (b) requires the [respondent] to plead procedural default in [the] return or [the respondent] will relinquish the right to assert the defense thereafter. . . . [I]n Connecticut, although the petitioner has the burden of proving cause and prejudice . . . that burden does not arise until after the respondent raises the claim of procedural default in [the] return. . . . Because the respondent did not plead procedural default as an affirmative defense . . . the court could not find that the petitioner was procedurally defaulted . . . ." (Citation omitted; internal quotation marks omitted.) *Ankerman* v. *Commissioner of Correction*, 104 Conn. App. 649,

654–55, 935 A.2d 208 (2007), cert. denied, 285 Conn. 916, 943 A.2d 474 (2008); see *Milner* v. *Commissioner of Correction*, 63 Conn. App. 726, 733, 779 A.2d 156 (2001) (supporting and applying position of federal habeas commentators that "petitioners generally need not raise waiver and procedural default matter in their initial pleading and briefs, because the burden to raise and prove those defenses is on the [respondent]" [internal quotation marks omitted]).[5]

In the present case, the respondent did not claim in the return that the petitioner had procedurally defaulted (or that the doctrine of deliberate bypass was applicable). Accordingly, we conclude that the court improperly raised the doctrine of deliberate bypass sua sponte and, therefore, that it erred in dismissing the petitioner's claim concerning Moore on this basis.[6]

## II

We next consider the petitioner's claim that Moore rendered ineffective assistance of counsel during the petitioner's criminal proceedings. The petitioner argues in relevant part that Moore's "decision not to advise [the petitioner], or any of her clients, with respect to plea offers was motivated by her desire to avoid habeas and grievance actions in which clients could claim that they were coerced into pleading guilty. . . . This blanket strategy was in no way formulated to benefit [the petitioner], and, to the contrary, her self-imposed protective mechanism put [her] interests in conflict with those of [the petitioner], who, as a defendant exercising his right to counsel under the sixth amendment to the United States constitution . . . expects to be counseled . . . ." (Citation omitted.) The respondent contends that Moore adequately advised the petitioner and that she was not required to tell him whether to take the plea. The respondent further argues that, although *Vazquez* v. *Commissioner of Correction*, 123 Conn. App. 424, 437–38, 1 A.3d 1242 (2010), cert. denied, 302 Conn. 901, 23 A.3d 1241 (2011), holds that specific recommendations may be required in certain situations, in the current case, where Moore represented the petitioner in 1997-98—long before *Vazquez* was decided— her competency should be measured against the benchmark of competence at that time and not "under current standards."[7] We agree with the petitioner that Moore rendered deficient performance to the petitioner concerning the plea offer.

We begin with the applicable standard of appellate review and the law governing ineffective assistance of counsel claims. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review. . . . *Sastrom* v. *Mullaney*, 286

Conn. 655, 661, 945 A.2d 442 (2008).

"A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . As we have noted previously, however, when a question of fact is essential to the outcome of a particular legal determination that implicates a defendant's constitutional rights, and the credibility of witnesses is not the primary issue, our customary deference to the trial court's factual findings is tempered by a scrupulous examination of the record to ascertain that the trial court's factual findings are supported by substantial evidence. . . . [W]here the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . *State* v. *Mullins*, 288 Conn. 345, 362–63, 952 A.2d 784 (2008)." (Internal quotation marks omitted.) *State* v. *DeMarco*, 311 Conn. 510, 519–20,     A.3d     (2014); id., 520 (if credible witness' "own testimony as to what occurred is internally consistent and uncontested by the defendant but, in fact, undercuts the trial court's ruling in favor of the state, a reviewing court would be remiss in failing to consider it").[8]

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel." (Citations omitted; internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 77, 967 A.2d 41 (2009). The United States Supreme Court, long before its recent decisions in *Missouri* v. *Frye*,     U.S.     , 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012), and *Lafler* v. *Cooper*,     U.S.     , 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012), recognized that the two part test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to ineffective assistance of counsel claims arising out of the plea negotiation stage. *Hill* v. *Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); see also *Missouri* v. *Frye*, supra, 1405 ("*Hill* established that claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*").

"Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas. . . . The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the

criminal process at critical stages. Because ours is for the most part a system of pleas, not a system of trials . . . it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process. To a large extent . . . horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long. That is what plea bargaining is. It is not some adjunct to the criminal justice system; it is the criminal justice system. . . . In today's criminal justice system, therefore, the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant.

"To note the prevalence of plea bargaining is not to criticize it. The potential to conserve valuable prosecutorial resources and for defendants to admit their crimes and receive more favorable terms at sentencing means that a plea agreement can benefit both parties. In order that these benefits can be realized, however, criminal defendants require effective counsel during plea negotiations. Anything less . . . might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him." (Citations omitted; internal quotation marks omitted.) *Missouri* v. *Frye*, supra, 132 S. Ct. 1407–1408; see also *Gonzalez* v. *Commissioner of Correction*, 308 Conn. 463, 478–79, 68 A.3d 624, cert. denied sub nom. *Dzurenda* v. *Gonzalez*, U.S. , 134 S. Ct. 639, 187 L. Ed. 2d 445 (2013).

Under the two part *Strickland* test, a petitioner asserting a claim of ineffective assistance of counsel must demonstrate both deficient performance and prejudice. *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 460, 880 A.2d 160 (2005), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006). The petitioner will meet his burden by establishing that counsel's performance "fell below an objective standard of reasonableness"; *Strickland* v. *Washington*, supra, 466 U.S. 688; and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 694. Where, as here, a petitioner rejects a plea offer, he must establish that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler* v. *Cooper*, supra, 132 S. Ct. 1385; see also *Missouri* v. *Frye*, supra, 132 S. Ct. 1409.

When considering whether Moore's performance was

deficient for failing to advise and assist the petitioner concerning the court's plea offer, the habeas court explained: "Moore acknowledged that it was her practice never to recommend to a criminal defense client to accept or reject a plea offer. She abstained from doing so to avoid later claims of a coerced plea. In particular, she made no recommendation to the petitioner as to whether to accept or reject the nine year offer. The question arises as to whether a practice eschewing such a recommendation comports with effective representation.

"There is no per se requirement obligating defense counsel to make such a recommendation. *Edwards* v. *Commissioner of Correction*, 87 Conn. App. 517, 524– 25, [865 A.2d 1231] (2005); *Vazquez* v. *Commissioner of Correction*, [supra, 123 Conn. App. 437–40]; *Purdy* v. *United States*, 208 F.3d 41, 48 (2d Cir. 2000). 'Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness . . . .' *Vazquez* v. *Commissioner of Correction*, supra, 438. The need for recommendation depends on 'countless' factors, such as 'the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea . . . whether [the] defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform [the] plea decision.' Id.

"The court has found that Moore fully apprised the petitioner as to the terms of the plea offer, including its temporary nature, the strengths and weaknesses of the prosecution and defense cases, and the possible outcomes after trial. . . . [The court] also explained to the petitioner this information. The proof of the petitioner's guilt hinged on the believability of a coconspirator and circumstantial proof linking a weapon to the petitioner, that is, conviction was not a foregone conclusion.

"The cases which have found defense counsel wanting for failure to recommend acceptance of a plea offer have typically involved hopeless cases where going to trial was 'suicidal' and where the disparity between the plea offer and the potential sentence after trial was enormous. See., e.g., *Boria* v. *Keane*, 99 F.3d 492 (2d Cir. 1996) [cert. denied, 521 U.S. 1118, 117 S. Ct. 2508, 138 L. Ed. 2d 1012 (1997)]. The circumstances of the present case differ markedly from such a scenario."

The petitioner argues that the habeas court erred in rendering its decision because Moore testified during the habeas trial that she presented the court's plea offer to him without giving him *any advice* on that offer, which, he argues, is constitutionally deficient performance that reduces counsel's role "to that of a mere messenger . . . ." He further explains that the role of an attorney is to give advice and counsel to a client,

especially in a criminal matter, and, in the present case, Moore specifically testified that she refrained from giving any such advice, which the habeas court acknowledged in its memorandum of decision. He further argues that Moore's testimony that she refrained from giving him any advice about the plea offer in order to protect herself demonstrated a clear conflict of interest in violation of rule 1.7 of the Rules of Professional Conduct[9] and rendered her *assistance* deficient and ineffective.[10] Although we agree with the habeas court that Moore had no obligation in this case specifically to tell the petitioner whether to take the court's plea offer, we conclude that she had an obligation to provide advice and assistance to the petitioner regarding that plea offer, which, she admittedly failed to do. Accordingly, after our own scrupulous search of the record—Moore's credibility not being an issue in this case—we agree with the petitioner that Moore's performance concerning the plea offer was deficient. See *State* v. *DeMarco*, supra, 311 Conn. 519–20.

"The decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in any criminal case. . . . [C]ounsel may and must give the client the benefit of counsel's professional advice on this crucial decision. . . . It is well-settled that defense counsel have a constitutional duty to convey any plea offers from the government and to *advise their clients on the crucial decision* whether to accept a plea offer. . . . A significant disparity between the sentence the defendant might have received had he [pleaded] guilty, and the sentence he received after trial, provides objective evidence that a defendant was prejudiced by his attorney's failure to adequately inform him of his plea options." (Citations omitted; emphasis added; internal quotation marks omitted.) *Cardoza* v. *Rock*, 731 F.3d 169, 178–79 (2d Cir. 2013).

In *Peterson* v. *Commissioner of Correction*, 142 Conn. App. 267, 272–73, 67 A.3d 293 (2013), we recently explained: "Although affirming a defendant's constitutional right to the effective assistance of counsel at the plea negotiations stage of criminal proceedings, our courts have nevertheless been reluctant to elaborate on attorney behaviors that may or may not constitute ineffectiveness. In *Ebron* v. *Commissioner of Correction*, 120 Conn. App. 560, 572, 992 A.2d 1200 (2010), rev'd in part on other grounds, 307 Conn. 342, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron*, U.S. , 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013), this court observed: '[P]lea bargaining is an integral component of the criminal justice system and essential to the expeditious and fair administration of our courts. . . . Commentators have estimated that between 80 and 90 percent of criminal cases in Connecticut result in guilty pleas, the majority of which are the product of plea bargains. . . . Thus, almost every criminal defendant is faced with the crucial decision of whether

to plead guilty or proceed to trial. Although this decision is ultimately made by the defendant, the defendant's attorney must make an informed evaluation of the options and determine which alternative will offer the defendant the most favorable outcome. A defendant relies heavily upon counsel's independent evaluation of the charges and defenses, applicable law, the evidence and the risks and probable outcome of a trial. . . . Indeed, the United States Court of Appeals for the Second Circuit has described the decision to plead guilty as ordinarily the most important single decision in any criminal case. . . . *Boria* v. *Keane*, [supra, 99 F.3d 496–97]. It further stated that [e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should enter." (Emphasis omitted; internal quotation marks omitted.)

In *Vazquez* v. *Commissioner of Correction*, supra, 123 Conn. App. 437, we explained: "Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer [an] *informed opinion as to what plea should be entered.* Determining whether an accused is guilty or innocent of the charges in a complex legal indictment is seldom a simple and easy task for a layman, even though acutely intelligent. . . . A defense lawyer in a criminal case *has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable.*" (Citation omitted; emphasis added; internal quotation marks omitted.)

We further explained: "On the one hand, defense *counsel must give the client the benefit of counsel's professional advice* on this crucial decision of whether to plead guilty. . . . On the other hand, the ultimate decision whether to plead guilty must be made by the defendant. . . . And a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer. . . . Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because [r]epresentation is an art . . . and [t]here are countless ways to provide effective assistance in any given case . . . . Counsel rendering advice in this critical area may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea (whether or not accompanied by an agreement with the government), whether [the] defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision." (Emphasis altered; internal quotation marks omitted.) Id., 438.

After examining relevant case law, we conclude that a crucial component of counsel's effective representation

during plea negotiations is *giving professional advice* to a defendant. See *Cardoza* v. *Rock*, supra, 731 F.3d 178–79; *Boria* v. *Keane*, supra, 99 F.3d 496; *Peterson* v. *Commissioner of Correction*, supra, 142 Conn. App. 273; *Vazquez* v. *Commissioner of Correction*, supra, 123 Conn. App. 437; see also Model Code of Professional Responsibility, Ethical Consideration 7-7 (1992);[11] Rules of Professional Conduct 2.1.[12] Although the defendant ultimately must decide whether to accept a plea offer or proceed to trial, this critical decision, which in many instances will affect a defendant's liberty, should be made by a represented defendant with the *adequate professional assistance, advice, and input of his or her counsel.* Counsel should not make the decision for the defendant or in any way pressure the defendant to accept or reject the offer, but counsel should give the defendant his or her *professional advice* on the best course of action given the facts of the particular case and the potential total sentence exposure. See *Cardoza* v. *Rock*, supra, 178 ("defense counsel have a constitutional duty to . . . advise their clients on the crucial decision whether to accept a plea offer" [internal quotation marks omitted]); *Peterson* v. *Commissioner of Correction*, supra, 273 ("[A]lmost every criminal defendant is faced with the crucial decision of whether to plead guilty or proceed to trial. Although this decision is ultimately made by the defendant, *the defendant's attorney must make an informed evaluation of the options and determine which alternative will offer the defendant the most favorable outcome. A defendant relies heavily upon counsel's independent evaluation . . . .*" [Emphasis added; internal quotation marks omitted.]); *Vazquez* v. *Commissioner of Correction*, supra, 437 ("[a] defense lawyer in a criminal case *has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable*" [emphasis added; internal quotation marks omitted]).

In the present case, there is no question that the habeas court credited Moore's testimony. During the habeas trial, Moore testified that the state initially had offered the petitioner a plea deal that required him to serve fourteen years of an eighteen year sentence, but that the court offered the petitioner a sentence of fifteen years, suspended after nine years of incarceration. The petitioner, however, wanted to serve only six years, and he wanted to know what sentences his codefendants would be getting before he decided on his course of action. Moore also testified that, although the court stated that the offer would be good only for that day, the court actually kept the offer open until the start of trial. Moore additionally testified during the habeas trial that she refrained from giving the petitioner *any advice* on the plea offer proposed by the court; she merely gave him the facts of the offer, providing no assistance or advice as he weighed his options.[13] Additionally, the trial court directly explained to the petitioner that he

was facing at least eighty-five years incarceration, and it offered him a plea deal of fifteen years, execution suspended after serving nine years. The petitioner indicated that he was willing to accept a plea deal, but he wanted only six years to serve, and he asked Moore to try to negotiate that for him. Moore gave the petitioner no professional assessment of the court's offer of nine years to serve in the context of the facts underlying the charges against him and his potential total sentence exposure.[14] Ultimately, after not accepting the court's offer of nine years to serve, the petitioner went to trial, was convicted, and received a sentence of thirty-five years incarceration. We conclude that on the facts of this case, Moore's performance was deficient because she did not give the petitioner her professional advice and assistance concerning and her evaluation of the court's plea offer.

### III

The petitioner next argues that, although the habeas court made no findings concerning prejudice, we can presume prejudice on appeal on the basis of the record. He argues that the record clearly demonstrates that he was willing to plead guilty because he made a counteroffer to the court, and it is reasonably probable that he would have taken the court's offer had counsel properly advised him. He asks that we order that the petition for a writ of habeas corpus be granted and that the court be ordered to give the petitioner the opportunity to plead guilty under the plea agreement he previously was offered by the trial court. The respondent contends that the record is inadequate to review the prejudice prong of the *Strickland* analysis because the habeas court made no findings as to prejudice. He argues, therefore, that we should affirm the judgment on the basis of an inadequate record. In the alternative, the respondent requests that we remand the case to the habeas court for consideration of the *Strickland* prejudice prong.

The respondent argues that we cannot make the credibility determinations that are necessary in determining whether the petitioner was prejudiced. He argues: "In applying the three-pronged test for determining whether Moore's failure to make a specific recommendation regarding [the trial court's] plea offer prejudiced the petitioner for Sixth Amendment purposes, the [respondent] does not dispute that the record is sufficient for this court to consider the prong that concerns whether [the trial court] would have continued to extend the offer after it was initially rejected by the petitioner; *Ebron* [v. *Commissioner of Correction*, 307 Conn. 342, 352, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron*,        U.S.      , 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013)]; given [Moore's] uncontested testimony that the judge held the offer open until the start of trial. . . . The [respondent] also does not dispute that the record is adequate for this court to find,

pursuant to another prong of the test, that the offer[ed] sentence of nine years to serve would have been less severe than the thirty-five year total effective sentence that the petitioner received as a result of his convictions at trial. However, the record is lacking regarding the final prong of the test, which is whether the petitioner would have accepted the offer had [Moore] recommended that he do so. The petitioner asserts that he would have accepted the offer . . . [b]ut only the habeas court, as the trier of fact, is in a position to assess the petitioner's believability on this matter and make the necessary credibility determination . . . ." (Citations omitted.)

The petitioner contends that we can presume prejudice on the basis of the record because it is uncontested that he was willing to take a plea deal because he asked Moore to try to negotiate a deal that required him to serve a term of six years, and he was not insisting on going to trial. Citing *Missouri* v. *Frye*, supra, 132 S. Ct. 1409, he argues that in this case there is no need for a credibility determination because he need not prove that he would have accepted the court's offer because the standard set forth in *Frye* requires only that he demonstrate *a reasonable probability* that he would have accepted such offer. We agree with the respondent that the habeas court is in the best position to determine whether it is reasonably likely that the petitioner would have accepted the offer had he received adequate advice from Moore.

The judgment is reversed in part and the case is remanded for further proceedings on the issue of whether the petitioner was prejudiced by counsel's deficient performance. In the event that the habeas court finds that the petitioner has established prejudice, and no timely appeal is taken from that decision, the judgment is reversed and the case is remanded with direction to grant the petition for a writ of habeas corpus. In the event that the habeas court finds that the petitioner has failed to demonstrate prejudice, and no timely appeal is taken from that decision, the judgment is reversed only as to form and the court is ordered to render judgment denying rather than dismissing the petition as it relates to the claim that Moore provided ineffective assistance of counsel.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Because we conclude that the court improperly, sua sponte, raised the issue of deliberate bypass and that the petitioner proved in the habeas court that Moore's performance was deficient concerning the plea offer, we also conclude that we need not consider the issue of whether Neary's performance was deficient for failing to pursue the issue of Moore's performance.

[2] The petitioner was convicted of attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a, conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a, two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), and alteration of a firearm identification number in violation of General Statutes § 29-36.

[3] We note that the petitioner argues in his reply brief that he did not knowingly and voluntarily decline to pursue this claim and that this is demonstrated by Neary's testimony that he specifically told the petitioner that such claims could be raised in a later habeas proceeding.

[4] We offer no opinion on the status of the doctrine of deliberate bypass in habeas proceedings alleging ineffective assistance of counsel, but we note that our Supreme Court has most recently discussed that issue in *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 180–90, 982 A.2d 620 (2009).

[5] Reasonable prior written notice of and the opportunity to be heard concerning a claim or defense are fundamental aspects of procedural due process. See, e.g., *Connolly* v. *Connolly*, 191 Conn. 468, 475, 464 A.2d 837 (1983) ("[t]he purpose of requiring written motions is not only the orderly administration of justice; see *Malone* v. *Steinberg*, 138 Conn. 718, 721, 89 A.2d 213 [1952]; but the fundamental requirement of due process of law. *Winick* v. *Winick*, [153 Conn. 294, 299, 216 A.2d 185 (1965)]").

[6] Although the court dismissed the petition as it related to the ineffective assistance claim concerning Moore, it nonetheless examined whether Moore was ineffective when it reviewed the petitioner's claims concerning former habeas counsel, which alleged that they were ineffective for failing to pursue ineffective assistance claims concerning Moore.

[7] The respondent's contention that in *Vazquez* we announced a new standard for counsel during plea negotiations has no merit. A similar argument was made before the United States Court of Appeals for the Second Circuit in *Roccisano* v. *Menifee*, 293 F.3d 51, 59 (2d Cir. 2002), when the petitioner in that case argued that he could not have raised his claim that counsel did not adequately advise him previously because the court had not yet decided *Boria* v. *Keane*, 99 F.3d 492 (2d Cir. 1996), cert. denied, 521 U.S. 1118, 117 S. Ct. 2508, 138 L. Ed. 2d 1012 (1997). Specifically, the court explained: "Roccisano's contention that he could not assert his present claim until he learned of our decision in *Boria* is meritless, however, for the principle applied in *Boria*, i.e., that the right to effective assistance of counsel encompasses the accused's right to be informed by his attorney as to the relative merits of pleading guilty and proceeding to trial, was hardly novel, having been articulated clearly by the Supreme Court nearly a half-century earlier, see *Von Moltke* v. *Gillies*, 332 U.S. 708, 721, 68 S. Ct. 316, 92 L. Ed. 309 (1948) ([p]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered).

"In *Boria*, we applied this principle in holding that an attorney had rendered constitutionally deficient assistance to the defendant by failing to discuss with him the advisability of accepting or rejecting a proffered plea bargain that would have resulted in a prison term of one-to-three years, where the attorney felt it would be suicidal to go to trial and the defendant, after going to trial, received a sentence of [twenty] years to life. See [*Boria* v. *Keane*, supra, 99 F.3d 494–95]. We noted that although our own Court had not previously been called upon to articulate the rule that an accused is entitled to receive such advice, our holding was based principally on the standards for claims of ineffective assistance of counsel set out more than a decade earlier in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and on well established principles set forth in American Bar Association (ABA) guidelines: While the Second Circuit may not have spoken, the *Strickland* Court has indicated how the question should be resolved. Just before starting its discussion of the merits, it observed that it had granted certiorari to consider the standards by which to judge a contention that the Constitution requires that a criminal judgment be overturned because of the actual ineffective assistance of counsel. [Id.] 684 . . . . Later it pointed to [p]revailing norms of practice as reflected in American Bar Association standards as guides to determining what is reasonable. Id. [688] . . . .

"The American Bar Association's standard on the precise question before us is simply stated in its Model Code of Professional Responsibility, Ethical Consideration 7-7 (1992): A defense lawyer in a criminal case has the duty to advise his client fully on *whether a particular plea to a charge appears to be desirable*. . . . *Boria* [v. *Keane*, supra, 99 F.3d] 496 . . . .

"Further, as recognized in *Boria*, the principle articulated by the Supreme Court in *Von Moltke* in 1948 had been reiterated decades prior to *Boria* by other circuit courts of appeals in *Walker* v. *Caldwell*, 476 F.2d 213, 224 (5th Cir. 1973), and *Jones* v. *Cunningham*, 313 F.2d 347, 353 (4th Cir.), cert.

denied, 375 U.S. 832, 84 S. Ct. 42, 11 L. Ed. 2d 63 (1963), and by the district court in which Roccisano was convicted and filed his 1991 and 1995 Motions, see *Boria* [v. *Keane*, supra, 99 F.3d] 497 ([i]n *United States* v. *Villar*, 416 F. Supp. 887, 889 [S.D.N.Y. 1976], Judge Motley . . . made the following observation about effective assistance of counsel: Effective assistance of counsel includes counsel's informed opinion as to what pleas should be entered).

"In sum, the principle that defense counsel in a criminal case must advise his client of the merits of the government's case, of what plea counsel recommends, and of the likely results of a trial, was established long before Roccisano was even prosecuted. Roccisano plainly was aware of the factual basis for his present claim, knowing what counsel's advice to him had been. The fact that *Boria* had not yet been decided gave him no excuse for not raising his present claim at least as early as his first [motion pursuant to 28 U.S.C. § 2255]." (Citations omitted; emphasis altered; internal quotation marks omitted.) *Roccisano* v. *Menifee*, supra, 293 F.3d 59–60.

[8] We find the language of *State* v. *DeMarco*, supra, 311 Conn. 520, to be instructive: "[I]f, upon examination of the testimonial record, the reviewing court discovers but one version of the relevant events upon which both the state and the defendant agree, and such agreement exists both at trial and on appeal, the reviewing court may rely on that version of events in evaluating the propriety of the trial court's determinations and determining whether the trial court's factual findings are supported by substantial evidence. In a case where the trial court has concluded that the police action at issue was justified and the undisputed version of events reflected in the transcript was adduced by the state through testimony of the police officers, a reviewing court's reliance on that version of events is particularly appropriate. If the officers' own testimony as to what occurred is internally consistent and uncontested by the defendant but, in fact, undercuts the trial court's ruling in favor of the state, a reviewing court would be remiss in failing to consider it."

Our Supreme Court in *DeMarco* was careful to insert a footnote stressing that the finder of fact is free to credit parts of a witness' testimony and to reject other parts. See id., 520 n.4. That specific limitation leads us to believe that the broad review approved in *DeMarco* is to be used sparingly and only where the overall thrust of a witness' testimony, relied upon by both parties, is clear and unequivocal.

We believe that Moore's testimony in the present case falls into that narrow category. Her testimony, which we have carefully reviewed, was clear and unequivocal. It was relied on by both sides, and credited by all parties and by the habeas court. We conclude, then, that the circumstances of the present case fit within the narrow exception recognized in *DeMarco*, and that we may rely on facts apparent from Moore's testimony, even though not expressly found by the habeas court.

[9] Rule 1.7 (a) of the Rules of Professional Conduct provides in relevant part: "[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

[10] The Rules of Professional Conduct, however, are not to be used as a basis to determine that a legal duty has been breached: "Indeed, one of the introductory provisions of the Rules of Professional Conduct expressly provides that a '[v]iolation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.' " *Biller Associates* v. *Peterken*, 269 Conn. 716, 722–23, 849 A.2d 847 (2004).

[11] Model Code of Professional Responsibility, Ethical Consideration 7-7 (1992), provides: "In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a

lawyer is entitled to make decisions on his own. But otherwise the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on his lawyer. As typical examples in civil cases, it is for the client to decide whether he will accept a settlement offer or whether he will waive his right to plead an affirmative defense. *A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable* and as to the prospects of success on appeal, but it is for the client to decide what plea should be entered and whether an appeal should be taken." (Emphasis added.)

[12] Rule 2.1 of the Rules of Professional Conduct provides: "In representing a client, a lawyer shall exercise independent professional judgment and *render candid advice.* In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social and political factors, that may be relevant to the client's situation." (Emphasis added.)

[13] Specifically, Moore testified as follows:

"[The Petitioner's Counsel]: Did you recommend to [the petitioner] that he accept [the court's] offer?

"[Moore]: I don't recommend that people take offers.

"[The Petitioner's Counsel]: You just convey the offer?

"[Moore]: That's correct."

* * *

"[The Petitioner's Counsel]: And just going back to April 21, 1997, you had testified that the prosecutor wanted eighteen, suspended after fourteen. The [court] offered fifteen, suspended after nine, and [the petitioner] said he would take six.

"[Moore]: Again, that's what appears to have happened.

"[The Petitioner's Counsel]: So, you are only three years apart, correct?

"[Moore]: . . . yes.

"[The Petitioner's Counsel]: And did you make any attempt to convince [the petitioner] to go with the nine years that [the court] was offering?

"[Moore]: As I indicated, I don't convince my clients. I indicate what the offer is. They tell me what they want or don't want, and I relay that to the judge.

"[The Petitioner's Counsel]: Okay. But based on the seventeen years [of] experience you had at that time, do you tell them, here is what I think is likely to happen, you should seriously consider taking this offer?

"[Moore]: No, I don't do that."

[14] We note, in particular, the following colloquy:

"[The Respondent's Counsel]: Did you feel that his desire for [a] six year sentence was realistic in light of the circumstances and his history?

"[Moore]: I don't think I had a feeling one way or the other. I felt that I would relay the court's offer to [the petitioner], [the petitioner] would tell me what he wanted me to relay to the court, and I did that; I didn't feel one way or the other.

"[The Respondent's Counsel]: If a client says to you, you know, what is the range that I can expect, how does what I desire fit into this? Do you go over that with them?

"[Moore]: Well, I don't think I ever had a conversation like that with my client."

––––––––––––––––––––––––